STATE OF VERMONT

ENVIRONMENTAL COURT

|                                                          |   |                          |
|----------------------------------------------------------|---|--------------------------|
|                                                          | } |                          |
| Appeal of Lamoille Housing Partnership and               | } |                          |
|   R. Bruce Nourjian                            | } | Docket No. 19-2-03 Vtec  |
|                                                          | } |                          |

Decision and Order

Appellants Lamoille Housing Partnership and R. Bruce Nourjian appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Stowe, denying conditional use approval for a 42-unit housing development.

Appellants are represented by Gregg H. Wilson, Esq.; the Town of Stowe is represented by Amanda S.E. Lafferty, Esq. Interested persons Christian Carey, Andrea Carey, Marcia Brobst, Lewis Snell, Jeanne Penoyar, Kenneth J. Forbes, Richard James and Clea James represented themselves. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took two site visits alone at the direction of the parties, the latter of the two after the leaves were off the trees. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellant proposes a 42-unit multiple-family Planned Residential Development project in five buildings on a 10.07-acre parcel in the RR1 zoning district[1], south of Stowe Village in the so-called Lower Village area. The proposal includes 6 units of market housing and 36 units of affordable housing. The proposal requires conditional use

---

[1] According to the Key Map in evidence, the easterly corner of the property, including one of the Millhouse buildings, building No. 1, is in the RR2 zoning district. Section 3 of the Zoning Regulations, governing zoning districts, does not appear to contain a provision governing the treatment of a parcel located in two districts, or allowing the zoning provisions for one district to be extended into another. However, the parties have treated the project as if it is located entirely within the RR1 zoning district. The location of a portion of the property in the RR2 district should have affected at least the calculation of the maximum number of units under §6.5(3).

approval under §4.7 of the Zoning Regulations; Planned Residential Development (PRD) approval under §17 of the Zoning Regulations; site plan approval under §§4.8 and 4.9 of the Zoning Regulations; and approval of an affordable housing density bonus under §17.6 of the Zoning Regulations. It also must meet the supplemental standards applicable to §6.2(2) conditional uses in the RR1 zoning district under §6.6 of the Zoning Regulations. In addition, Appellant obtained waiver of four[2] of the 84 required parking spaces.

The parties agreed during trial that the issues remaining in this appeal, as reflected in the Statement of Questions, are whether the project meets §4.7(2)(A)(3)(general conditional use standards regarding character of the area); §4.7(2)(B)(7)(specific conditional use standard regarding adequacy of pedestrian circulation and access); §4.9(1)(A) (site plan approval standard regarding compliance with the municipal plan, made applicable through §4.7(2)(B) (3)); and §6.6 (supplemental standards applicable to multi-family housing in the RR1 district).

The project parcel is located between Sylvan Park Road and Thomas Lane, in a generally wooded area to the east of and uphill from Route 100, with proposed access from Sylvan Park Road and no vehicular or pedestrian access from Thomas Lane. The parcel is undeveloped. It slopes upwards generally from the southwest towards the

---

[2] Appellants and the Town filed a post-hearing stipulation that Appellants received approval of a reduction in the number of parking places (from the 84 required to the 80 proposed) from the Planning Commission. This decision of the Planning Commission does not appear to have been appealed. The text of the application and the testimony at trial had proposed 44 spaces within the underground garages and 40 outdoor spaces. The plans in evidence show 48 indoor garage spaces (24 in each of the two Millhouse building garages) but only 31 outdoor spaces (not including the dumpster pad) on the Site and Landscaping Plan (PL-1) for total of only 79 spaces, unless there is an additional space obscured by a tree in the parking lot between buildings 2 and 4.

northeasterly side of the parcel.   The project parcel contains more thickly forested areas, wetlands, and generally steeper slopes to the west and southwest within the parcel.  It contains a wildlife corridor allowing wildlife to move through the parcel.  The wildlife corridor traverses the parcel generally from the southwest to its easterly boundary and beyond to the undeveloped uplands above and to the north and east of the parcel.  The forested portion of the northeasterly side of the parcel is less thickly forested than the southwesterly portion, and contains tall but relatively thin trees.  Seasonally, when the leaves are off the deciduous trees, this forested area only partially screens  the area of the project parcel proposed for building, when seen from the residential properties on the southwesterly side of Thomas Lane.  Even with the proposed plantings, the visual screening will be particularly thin from the closest Thomas Lane properties to the project parcel.   The proposed buildings will be well screened from Sylvan Park Road.

As calculated from the plans, two of the proposed buildings (the 'Millhouse' buildings) each contain sixteen units (eight 2-bedroom units and eight 1-bedroom units), over an apparently twenty-four space underground parking garage.  Two of the proposed buildings (the 'Farmhouse' buildings) each contain four 2-bedroom units.  The remaining 'Carriage House' building contains the two 3-bedroom units and also houses common laundry, office and maintenance functions on its downslope side.  The project as a whole proposes a total of 70 bedrooms.

The proposed Millhouse buildings are similar in scale to the commercial buildings on Thomas Lane and to some current and historical mill structures across Route 100 along the Little River (see Municipal Plan Appendix I, pp. 4-5).  They are not similar in scale to any nearby buildings in the RR1 zoning district or to the residences along Sylvan Park Road or Sachs Pond Road, or to the residences on upper Thomas Lane.  The proposed Millhouse buildings are 2½ stories in appearance, with dormer structures within the high peaked roof intended to 'further domesticate' their appearance.  They are well-designed but have the appearance of large hotel-type or multi-family residential or multi-unit office-type buildings.   The proposed Farmhouse buildings are residential in scale and appearance and similar in size to large nineteenth-century farmhouses or large two-family village residences, but not to the residences along Sylvan Park Road or Sachs Pond Road.

The proposed Carriage House building is residential in scale and similar in size and appearance on the sides and front to a large two-family residence, but is 3½ stories when seen from the back, and is not similar in scale or appearance to the relatively small single family residences along Sylvan Park Road or Sachs Pond Road. The buildings are grouped around shared open spaces, located generally towards the northwest quadrant of the property, relatively far within the property from Sylvan Park Road and relatively close to the back lot lines of the adjoining Thomas Lane properties.

Sylvan Park Road is a paved town road that forms a loop, both ends of which intersect with Route 100, about 500 feet apart. Sachs Pond Road cuts across the loop from north to south, and may be used as an alternative access when one or the other leg of Sylvan Park Road is perceived as congested. The proposed access road for Appellants' project extends northerly from Sylvan Park Road, almost directly across Sylvan Park Road from the northerly end of Sachs Pond Road. Sylvan Park Road has no curbs, sidewalks or pedestrian access to Route 100. Its northerly leg makes a steep descent as it runs along the project property's frontage and down towards Route 100. The distance to Route 100 from the proposed access road for the project, along the northerly leg of Sylvan Park Road, is approximately 1,200 feet. It is approximately an additional mile along Route 100 or along Thomas Lane[3] to the center of Stowe village from that point. The school bus stop for any children from the Sylvan Park Road/Sachs Pond Road neighborhood, including the project property, is on Route 100 at the intersection of Sylvan Park Road with Route 100.

Uses along the easterly side of Route 100 between the two intersections of Sylvan Park Road with Route 100 include a motel and two gas stations with convenience stores. These uses are in the Lower Village Commercial zoning district, which extends at a variable width on both sides of Route 100 (400 feet easterly of Route 100 in the vicinity of the project parcel). The neighborhood served by Sylvan Park Road and Sachs Pond Road uphill and to the east of Route 100 is in the RR1 zoning district. It consists of

---

[3] Thomas Lane is planned as a loop road to the school and Stowe Village, but has not yet been completed as a through road.

approximately thirty-five small residential lots, a half-acre to an acre in size, most with relatively small houses constructed in the 1970s and 1980s, and most in a chalet or cape architectural style.  If considered as part of the Sylvan Park Road and Sachs Pond Road residential neighborhood (the only one to which it has vehicular or pedestrian access), the proposed project would represent approximately double the number of residential units and vehicles as compared with the existing neighborhood.

Thomas Lane is the next road to the north leading off Route 100 towards the northeast.  Beyond the Lower Village Commercial zoning district along Route 100, the lower portion of Thomas Lane is in the Village Planned Unit Development Residential/Industrial zoning district or the Village Planned Unit Development Industrial zoning district.  Easterly and uphill along Thomas Lane beyond the parcels fronting Route 100, there are two larger non-residential buildings housing several commercial and light industrial or small manufacturing uses.  Northeasterly and uphill from these uses, on the northerly side of Thomas Lane, is a large multi-unit complex of residential buildings comprising a planned community known as Copley Woodlands.

Easterly and uphill from these uses is a newer residential neighborhood of small residential lots.  This subdivision was approved relatively recently, and is also located in the Village Planned Unit Development Residential/Industrial zoning district and not in the RR1 zoning district.  It is referred to as the upper Thomas Lane neighborhood or the Ampersand development.  Some of these residential lots are directly adjacent to the northeasterly boundary of the project property, close to the development area.  This upper Thomas Lane residential neighborhood contains fifteen residential lots each less than an acre in size; eight of these lots were undeveloped at the time of trial, six contain single-family cape-style houses and one contains a duplex residence.

This upper Thomas Lane subdivision was approved without requiring reservation of a corridor that would have allowed connection through the project parcel to Sylvan Park Road.  Thomas Lane is planned to connect through to the north and east to Stowe Village and its school and recreation facilities, as a loop road to provide a route into Stowe Village avoiding Route 100 and its intersection with Route 108.

The proposed project buildings make very effective use of a rather difficult site, if

5

considered only in relation to the constraints of the project parcel itself. However, the Court must analyze the proposal according to the requirements of the Zoning Regulations, including the location of the project parcel with respect to other properties, the available pedestrian and vehicular access to the project parcel, and the provisions of the municipal plan for the RR1 zoning district, to determine whether the project should be approved under the Zoning Regulations.

Section 6.6 (supplemental standards for conditional uses in the RR1 district)

Under §6.6, all of the conditional uses specifically allowed by §6.2(2) in the RR1 district, including multi-family housing, must be "designed in a manner compatible with the area's rural character," at a minimum considering the "architectural design and visual context" of the project and the "mass and scale compatible with neighboring[4] properties" as well as with the site. While the buildings are well-designed and grouped to fit the proposed number of housing units and parking spaces into this constrained site, the project is not compatible with the intended rural character of the portion of the area zoned RR1 or RR2, is not of a mass and scale compatible with neighboring properties, and the architectural design of the largest buildings is out of context.

The Millhouse buildings are designed to reflect vernacular Vermont mill architecture, not residential or agricultural building styles, even with the added dormers. They are well-designed for that purpose, and would be well suited to a context of similar larger buildings closer to Route 100, such as the Commodore Inn, or to historic mill buildings along the Little River. They are out of context in the Sylvan Park Road/Sachs Pond Road residential neighborhood of modest residences. Nor are they of a mass and scale compatible with the neighboring properties on Thomas Lane, from which they will be able to be seen. The project as proposed therefore fails to meet §6.6.

---

[4] We note that this standard requires analysis of adjacent properties, as opposed to examining the character of adjacent zoning districts or the area or neighborhood in which the project is located.

6

Section 4.7(2)(B)(7)(specific conditional use standard - pedestrian circulation and access)

Pedestrian circulation within the site is provided for by sidewalks and by a pedestrian walkway out to Sylvan Park Road along the project access road. However, there is no pedestrian access through to Thomas Lane.[5] Although the anticipated numbers of vehicles and pedestrians[6] to be added to Sylvan Park Road by the proposed project was not presented in evidence, it is apparent from the evidence that pedestrian access to and from the project property along Sylvan Park Road down to Route 100 is entirely inadequate for safe pedestrian use or for the safety of vehicle/pedestrian interaction along the steep legs of Sylvan Park Road, especially during winter conditions. No sidewalk exists and no sidewalk is proposed to be added to the nearest leg of Sylvan Park Road to the project. There is no separation between the vehicles and any pedestrians using the road, there is no adequate shoulder for pedestrian use, especially considering the steepness of the road and its likely condition with snowbanks in the winter. The project as proposed therefore fails to meet §4.7(2)(B)(7).

Section 4.7(2)(A)(3)(general conditional use standards regarding character of the area)

A purpose of the RR1 and RR2 zoning districts is to allow a higher density "while maintaining the quality of the neighborhoods." The conditional use criterion requiring that the project as proposed not adversely affect the character of the area must be read in this context. The character of the Sylvan Park Road/Sachs Pond Road area is a moderate density rural residential neighborhood of modest-sized houses on small lots (roughly a half-acre in size). Even though the project buildings will not be visually obvious from Sylvan

---

[5] Evidence was not presented as to the expected under-driving-age population of the proposed project, nor to the extent of any anticipated demand for a pedestrian (including bicycle, rollerblade, or skateboard) access to the school and recreation fields through to Thomas Lane. At least the 24 2-bedroom units and the two 3-bedroom units reasonably can be expected to house school-aged children.

[6] A traffic study apparently completed for the project is referred to in the application text but was not in fact attached or otherwise provided.

Park Road, the doubling of population using Sylvan Park Road and Sachs Pond Road due to the proposed project will adversely affect the character of the area.

Unlike the Sylvan Park Road/Sachs Pond Road neighborhood, not all of the Thomas Lane neighborhood will be affected by the proposed project, because there is no access through it from the proposed project. Only those properties adjoining it or able to see it in the upper Thomas Lane residential development will be potentially affected by it (even assuming no illegal pedestrian traffic cutting through the Thomas Lane neighborhood). That neighborhood is a small-scale residential neighborhood with moderate sized houses on small lots. It is effectively isolated from industrial and large-scale residential developments that also use Thomas Lane for access to Route 100 and to Stowe Village, even though those are nearby. By contrast, the large scale buildings and concentrated density of the proposed project so close to the adjoining Thomas Lane properties will adversely affect the small-scale residential character of the upper Thomas Lane neighborhood.

## Section 4.9(1)(A) (site plan approval standard regarding compliance with the municipal plan)

An important objective of the Municipal Plan is to provide affordable housing, emphasizing "the needs of the service-oriented work force and special population groups such as the elderly and low and moderate income families." Municipal Plan, p. 7-1. This proposal meets that objective by providing 36 units of affordable housing.

The Municipal Plan also states that "affordable housing should be scattered rather than concentrated in single locations." Municipal Plan, p. 7-7. This recommendation must mean that it should be distributed throughout the town rather than being concentrated in large low-income 'projects;' it cannot mean that affordable housing should be scattered over any given site, or it would conflict with the overall purpose of the rural residential districts to "promote the preservation of adequate open space through carefully planned cluster types of development." This proposal meets the objective of 'scattered' rather than 'concentrated' affordable housing, both because it is not near other affordable housing sites within the town, and because it is a mixed development of affordable and market

8

units, clustered on the site.

However, the proposed project fails to comply in two respects with the Municipal Plan. It fails to comply with the Transportation section on pages 2-10 through 2-13 by failing to provide safe pedestrian and bicycle access down Sylvan Park Road to Route 100 to connect with public transportation, and by failing to provide either a vehicular or a pedestrian connection through to Thomas Lane and thence to the school, recreational fields, and an alternate route to Stowe Village. The Court recognizes that the lack of a Thomas Lane connection is not due to any lack of effort on Appellant-Applicants' part, but is due to the fact that the most recent Thomas Lane development was not required to provide a through connection to the parcel property. However, the lack of that connection may have the result of reducing the density of pedestrians and vehicles that can reasonably be allowed to be added to Sylvan Park Road, especially without the addition of a separate sidewalk down to Route 100.

The proposed project also fails to comply with the purpose stated in the Plan and repeated in the Zoning Regulations for the RR1 zoning district, to allow a higher density "while maintaining the quality of the neighborhoods." As discussed above, at the scale and density of the proposed project, it doubles the population using Sylvan Park Road, it obtrudes large buildings into the visual field of the upper Thomas Lane neighborhood without adequate screening, and therefore fails to maintain the quality of those two residential neighborhoods, especially considering that the Sylvan Park Road/Sachs Pond Road neighborhood is also in the RR1 zoning district.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that conditional use approval for the proposed project as designed must be and hereby is DENIED. It remains possible that a smaller-scale project could be approvable on this parcel, and the present denial is specifically without prejudice to any applicant's submittal of modified, reduced or different proposals for the property in the future.

Dated at Barre, Vermont, this 30th day of April, 2004.

9

_____
Merideth Wright
Environmental Judge